UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-02569-JRS-DML |
| | ) |
| EINSTIEN NOAH RESTAURANT | ) |
| GROUP INC., | ) |
| | ) |
| Defendant. | ) |

**Order Granting Summary Judgment**

Plaintiff James Thompson ("Thompson") invokes the Court's federal question jurisdiction under 28 U.S.C. 1331, accusing defendant Einstein Noah Restaurant Group Inc. ("Einstein") of unlawful discrimination under federal law. Defendant's Motion for Summary Judgment (ECF No. 29) is fully briefed and ripe for decision. Having considered the motion, response, reply, evidence, and applicable law, the Court concludes that the motion should be GRANTED for the following reasons.

## I. Background

Plaintiff James Thompson ("Thompson") worked as a baker at an Einstein Noah Restaurant Group Inc. ("Einstein") restaurant from June 2014 to January 2017. (ECF No. 30-2 at 61:11-24.) After his shift on January 5, 2017, Thompson fell asleep at a table in Einstein's dining room while wearing his Einstein uniform. (ECF No. 30-3 ¶ 4.) One of Thompson's co-workers woke him up and Thompson moved to another table where customers were sitting. (ECF No. 30-3 ¶ 4.) Thompson then fell

1

asleep again. (ECF No. 30-3 ¶ 4.) David Webber, Einstein's general manager and Thompson's supervisor, testified that the customers gave Webber a "look of discomfort" as Thompson slept at their table. (ECF No. 30-3 ¶ 4.) Thompson's supervisor then approached Thompson and asked him to wake up and leave the restaurant. (ECF No. 30-3 ¶ 5.) Shortly after Thompson left the restaurant, his supervisor received a call from a regular Einstein customer, advising him that she had just seen Thompson almost hit Einstein's building and her vehicle as Thompson drove out of the parking lot. (ECF No. 30-3 ¶ 6.) The customer told Thompson's supervisor that she had called and reported Thompson's behavior to the police. (ECF No. 30-3 ¶ 6.) The customer also advised Thompson's supervisor that she would not return to Einstein because of this parking lot incident. (ECF No. 30-3 ¶ 6.)

Later that day, the police responded to a call that Thompson was sleeping in the middle of the road and arrested him for driving while intoxicated and for driving with a suspended license. (ECF No. 30-2 at 87:2-24-90:24-25.) Thompson remained in jail until January 6, 2017, when he posted bond. (ECF No. 30-2 at 91:16-21.) Because he was incarcerated, Thompson failed to report to Einstein on January 6th for his scheduled shift. (ECF No. 30-3 ¶ 8; ECF No. 30-2 at 99:3-18.) Einstein considered Thompson's absence a "no-call, no-show" absence because Thompson failed to notify his supervisor of this absence beforehand. (ECF No. 30-3 ¶ 8; ECF No. 30-2 at 99:3-18.) On January 7, 2017, Thompson reported for his shift at Einstein and learned that his employment had been terminated. (ECF No. 30-2 at 100:9-22.) Thompson's supervisor testified that three factors motivated him to terminate Thompson's employment:

(1) Thompson's "no-call, no-show" absence on January 6, 2017; (2) Thompson's falling asleep at a table in the dining room; and (3) the report by a regular guest that Thompson almost hit the building and her car as he left Einstein's parking lot. (ECF No. 30-3 ¶ 9.) Thompson, however, alleges that Einstein terminated him because of his race, in violation of Title VII of the Civil Rights Act of 1967, 42 U.S.C. § 2000e and/or 42 U.S.C. § 1981. (ECF No. 1 at 1.)

## II. Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (1986).

### III. Discussion

Einstein moves for summary judgment on Thompson's claim of racial discrimination under Title VII and 42 U.S.C. § 1981, arguing that Thompson fails to establish a prima facie case of unlawful discrimination. (ECF No. 30 at 9.) Einstein also argues that Thompson's discrimination claim must fail because he "admitted at deposition he does not believe Einstein discriminated against him because of his race." (ECF No. 30 at 2.) Finally, in addition to arguing that summary judgment is warranted because Thompson did not follow the procedural rules (ECF 37 at 2); Einstein argues that Thompson's Title VII discrimination claim fails because the claim is time-barred. (ECF No. 30 at 13.)

#### A. Legal Standard

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from acting in retaliation against employees who oppose any practice made unlawful under Title VII. 42 U.S.C. § 2000e-3(a). Section 1981 prohibits race discrimination and retaliation. 42 U.S.C. § 1981(a); *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014). Courts apply the same standards to analyze claims under Title VII and § 1981. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015).

Plaintiffs alleging discrimination may prove their claims using either the direct method or indirect method of proof. *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234

4

(7th Cir. 2014). Under the direct method, a plaintiff proves his case "by pointing to evidence directly showing that [his] employer subjected [him] to an adverse employment action on an impermissible discriminatory basis." *Id.* Under the indirect, burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must first establish a prima facie case of discrimination based on, as alleged in this case, race. *Id.* at 802. A plaintiff establishes a prima facie case of discrimination by presenting evidence that would allow a reasonable jury to find on each claim that: (1) he is a member of a protected class; (2) he was meeting the employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly-situated, non-protected class member. *See Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). If the plaintiff can prove a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas,* 411 U.S. at 802. If the employer articulates such a reason, the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the employer's stated reason was pretext. *Id.* at 804.

Regardless of whether a plaintiff uses the direct method of proof, indirect method, or both methods, the legal standard is the same, namely, "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterps., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). *Ortiz* "did not alter *McDonnell Douglas* or displace the indirect method of establishing a prima

facie case of discrimination." *Golla v. Office of Chief Judge of Cook Cty., Ill.*, 875 F.3d 404, 407 (7th Cir. 2017). Rather, "the indirect method remains a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *Id.* (internal quotation marks omitted) (quoting *David v. Bd. of Trs. of Cmty. Coll. Dist.* No. 508, 846 F.3d 216, 224 (7th Cir. 2017).

### B. Thompson's Response

Fatally, Thompson's response does not dispute any of the facts relating to the termination of Thompson's employment, nor does it offer any admissible evidence or argument indicating any racial animus played into the termination. Indeed, Thompson has not submitted any evidence to create a single triable issue in this case. Rather than denying any of the conduct that Einstein maintains led to his discharge, he confirms it in his filings, but tries to argue that those facts are not sufficient to lead to his termination. None of those facts relate to race. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

Even though it is well-settled that "[a] party must support each fact the party asserts in a brief with citation to . . . admissible evidence," Local Rule 56-1(e) (emphasis added), Thompson's brief is completely devoid of citations to the record. (ECF No. 34.) Worse still, Thompson's only purported support for his argument is his mention of an Administrative Law Judge's ruling in a related unemployment hearing, which allegedly deemed two of Einstein's three reasons for terminating Thompson "insufficient to constitute just cause for termination." (ECF No. 34 at 1.) However, Thompson failed to submit this administrative decision into evidence and fails to cite to this evidence, leaving the Court with no admissible evidence to consider. *Albrechtsen v. Bd. of Regents of Univ. of Wisc. Sys.*, 309 F.3d 433, 436 (only considering facts supported by record cites); *U.S. v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010) (affirming summary judgment to defendant against *pro se* plaintiff who failed to point to admissible evidence in his response to the defendant's motion for summary judgment). Moreover, this administrative decision does not contradict, but rather seems to admit the very facts of record concerning Thompson's offending conduct.

In opposing summary judgment, Thompson is also required to identify potentially determinative facts and factual disputes in a section labeled "Statement of Material Facts in Dispute." S.D. Ind. L.R. 56-1(b). Thompson fails to provide this statement. The consequence of Thompson's failure is that he concedes Einstein's version of events. *See Smith v. Lanz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see also*

*Wackett v. City of Beaver Dam,* 642 F.3d 578, 582 n.1 (7th Cir. 2011). The Court continues to apply the above articulated summary judgment standard, but Thompson's failure to comply with the Local Rules "reduc[es] the pool" from which the facts and inferences may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997). The Seventh Circuit has "repeatedly upheld the strict enforcement of these rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir. 1994). Indeed, although the Court will not rest its decision solely on Thompson's failure to comply with the Federal and Local Rules, this failure could provide the Court an independent basis to grant summary judgment to Einstein. *See Id.* at 924 ("The factual statement required by Local Rule 56.1 is not a mere formality. It follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial, and it substantially facilitates the district court's task in deciding whether a trial is indeed necessary. [The plaintiff's] failure to comply with the local rule was, accordingly, not a harmless technicality, but a mistake that our precedents (for good reason) have deemed fatal.").

However, *pro se* submissions such as that filed by Thompson in this case may be construed liberally and may be held "to a less stringent standard than formal pleadings drafted by lawyers." *Perez v. Fenoglio,* 792 F.3d 768, 776 (7th Cir. 2015) (internal quotation omitted). While it is "well established that pro se litigants are not excused

from compliance with procedural rules," *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008), whether the Court holds pro se litigants to the consequences of violating the Court's Local Rules is a matter of discretion, *Gray v. Hardy*, 826 F.3d 1000, 1004-05 (7th Cir. 2016) (holding that district courts are not required to hold pro se litigants to the potential consequences of their failure to comply with the Local Rules and can instead take "a more flexible approach," including by ignoring the deficiencies in their filings and considering the evidence they submit).

Thompson undoubtedly did not comply with Local Rule 56-1 in any of his submissions to the Court, but a "flexible approach" to compliance with the Local Rules is warranted here. The often harsh consequence for failure to comply with Local Rule 56-1—concession of the defendants' version of events—is inappropriate for this motion given that (1) Thompson does not dispute any of the facts presented by Einstein, or offer any additional facts in his response; and (2) Thompson's position is clear from his filings that he simply argues his belief that the combination of three offending events upon which his discharge was premised fails because two of the three events were insufficient grounds for discharge. Thus, Einstein is in no way prejudiced by Mr. Thompson's failure to include a "Statement of Material Facts in Dispute" section in his brief or by any of his other failures to comply with Local Rule 56-1. In any event, Local Rule 56-1 permits the court to excuse strict compliance with the rule in the interest of justice. For these reasons, a flexible approach to Mr. Thompson's compliance with the Local Rules is warranted.

### C. Thompson's Title VII Claim is Time-Barred

Einstein alleges that Thompson cannot bring his Title VII claim because the claim is time-barred. (ECF No. 30 at 13.) The timely filing of an EEOC charge is "not a jurisdictional prerequisite to filing a federal lawsuit, but rather, is more akin to a statute of limitations and subject to . . . equitable tolling under appropriate circumstances." *Day v. Lincoln Ins. Agency, Inc.*, 1 F. App'x 521, 523 (7th Cir. 2001); *See also Hentosh v. Herman M. Finch Univ. of Health Sciences*, 167 F.3d 1170, 1174 (7th Cir. 1999) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). A plaintiff has 90 days from receipt of the "Dismissal and Notice of the Right to Sue" to file a complaint with the appropriate court. 42 U.S.C. § 2000e–5. The 90 days begins to run when the plaintiff or his attorney has actual receipt of the Notice. *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001). A complaint filed after the 90 days is time-barred and subject to dismissal. *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 270 (7th Cir. 2004). "Equitable tolling applies when a plaintiff, despite the exercise of due diligence and through no fault of [her] own, cannot determine information essential to bringing a complaint," *Ashafa v. City of Chicago*, 146 F.3d 459, 463 (7th Cir. 1998) (internal quotations and citation omitted); *see, e.g., Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 605 (7th Cir. 1992).

Prior to filing the present suit, Thompson filed an EEOC Charge of Discrimination (Charge No. 470-2017-01497) against Einstein. (ECF No. 30-5 at 2.) The EEOC closed its file on Thompson's complaint on April 11, 2017 and notified Thompson of his right to file suit. (ECF No. 30-5 at 2.) The EEOC Notice of Suit Rights ("Notice")

explained that if Thompson did not file his lawsuit within 90 days of receipt of the Notice, his "right to sue based on th[e] charge [would] be lost." ([ECF No. 30-5 at 2](#).) Although Thompson testified that he does not remember the exact date he received the EEOC Notice, he testified that he received the Notice "somewhere near" April 11, 2017. ([ECF No. 30-2 at 80](#):17-81:5.) In cases where the receipt date for an EEOC Notice is unknown, courts will assume the individual received the Notice "five days from the mailing date." *Loyd v. Sullivan,* [882 F.2d 218, 281 (7th Cir. 1999)](#) (per curiam) ("unless proven otherwise, the receipt date is presumed to be five days from the mailing date.") Thus, the Court agrees with Einstein's fair assumption that Thompson received the Notice on April 16, 2017. (ECF No. 30 at 13.) 90 days from this date is July 15, 2017. Thompson did not file this suit until July 31, 2017, more than 90 days after the presumed Notice receipt date. ([ECF No. 30-5 at 1-2](#).) Additionally, Thompson fails to argue that equitable tolling of this 90-day filing period should be extended to his claim. Therefore, Thompson's Title VII claim is time-barred, and summary judgment is proper on this claim. Still, mindful of the leniency that may be accorded to a *pro se* party, and of the absence of evidence of the exact day of receipt, the Court will not, and need not rely on this apparent procedural misstep. In any event, the claim would still survive under [42 U.S.C. § 1981](#).

### D. Discrimination

Notwithstanding the procedural failure of Thompson's response and his time-barred Title VII claim, Einstein argues that Thompson fails to establish a prima facie case for unlawful discrimination. As mentioned above, a plaintiff establishes a prima

11

facie case of discrimination by presenting evidence that would allow a reasonable jury to find that: (1) he is a member of a protected class; (2) he was meeting the employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly-situated non-protected class member. *See Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). It is undisputed that Thompson is a member of a protected class and that he suffered an adverse employment action, namely the termination of his employment. However, Thompson fails to prove the other elements of his prima facie case, and as such, summary judgment is proper on his Title VII claim.

First, Thompson fails to present evidence that he was meeting Einstein's legitimate employment expectations. Einstein argues that Thompson was terminated because of the following conduct: (1) he was a "no-call no-show" for his shift on January 6, 2017; (2) he fell asleep at a table in his workplace dining room with customers present; and (3) an Einstein customer reported seeing Thompson almost hit the building and her car with his vehicle as he left the restaurant. (ECF No. 30-2 at 105:3-107:19.) "[R]epeated violations of company policies, including . . . notifying [an] employer of impending absence less than two hours prior to the start of [a] shift [is] a failure to meet [an] employer's legitimate expectations, precluding establishment of a prima facie case of discrimination." *See e.g., Figgs v. Gepner,* 211 F.Supp.2d 1088, 1093 (N.D. Ill. 2002). Thompson does not dispute that he violated Einstein's attendance policy by failing to notify Einstein that he would be absent from his shift on January 6, 2017. (ECF No. 30-2 at 90:3-18.) In addition, Thompson concedes that he

12

fell asleep at a customer's dining table (ECF No. 30-2 at 82:10-21). Thompson testified that he received a copy of and understood Einstein's "employee handbook," which contained both the attendance policy and the performance evaluation policy. (ECF No. 30-2 at 69:4-24.) Einstein's "performance evaluation[s]" policy states that an employee's performance evaluation takes into consideration the employee's "consistent maintenance of professional and appropriate demeanor." (ECF No. 30-4 at 2.) Almost hitting a patron's car and falling asleep at a customer's table while wearing an Einstein uniform may certainly constitute a "violation[] of company policies," (ECF No. 30-4 at 2) *see e.g., Figgs v. Gepner,* 211 F.Supp.2d 1088, 1093 (N.D. Ill. 2002), but this Court "does not sit as a 'super-personnel department,' second-guessing an employer's 'business decision as to whether someone should be fired or disciplined . . . .'" *Coleman v. Donahoe,* 667 F.3d 835, 862 (7th Cir. 2012) (quoting *Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 697 (7th Cir. 2006)). Accordingly, this Court refuses to scrutinize Einstein's business decision to terminate Thompson's employment and agrees that Thompson fails to prove that he was meeting Einstein's legitimate employment expectations. In fact, the Court finds that any of the conduct, alone or in combination, would not meet Einstein's legitimate employment expectations.

Thompson also fails to prove that a similarly-situated employee outside a protected class was treated more favorably than he. To prove a prima facie case of race discrimination, Thompson must prove that a similarly-situated coworker reporting to the same supervisor as he, had engaged in similar conduct to Thompson's and received more favorable treatment. *Goodwin v. Bd. of Trustees of Univ. of Ill.,* 442 F.3d

13

611, 617 (7th Cir. 2006). Thompson fails to provide viable comparators and lacks personal knowledge regarding whether these comparators had "no-call, no-show" absences, or other conduct like Thompson's. The only purported comparators Thompson provides, albeit only as mere allegations in his complaint and without any supporting evidence, are Rachetta Hall, Taureen Sanders, Che Moore, Connie Lamm, and Nicole Jones. Not only are the naked allegations in the complaint unsupported by any admissible evidence, they are undermined by evidence of record, including Thompson's own testimony. Hall, Sanders, and Moore are all African-American, and thus are not viable comparators "outside the protected class." *Id.* Lamm is White, but she has never fallen asleep at a dining room table in front of customers, never had a "no-call, no-show" absence, and never received any type of discipline while working for Thompson's supervisor. (ECF No. 30-2 ¶ 16.) Thus, Lamm is also not a viable comparator. *See Cornett v. Navistar Intern Corp.,* No. IP99-1642-C-M/S, 2001 WL 686953, at *4 (S.D. Ind. Jun. 5, 2001) (failure to present evidence that plaintiff's coworker engaged in conduct sufficiently similar to his was fatal to his meeting the similarly-situated requirement).

Thompson also offers Nicole Jones as a comparator, alleging that Jones also had a "no-call, no-show" absence because of a driving incident like Thompson's, but was not terminated. (ECF No. 30-3 at 104:14-19.) But Jones is also not a viable comparator. Jones is a shift leader, and thus not similarly-situated to Thompson, a subordinate employee. (ECF No. 30-3 at 112:21-22.) Finally, Thompson admitted that he lacked personal knowledge of whether any of the proffered comparators had "no-call,

14

no-show" absences in the first place. ([ECF No. 30-2](#) at 125:1-5-126:1-2.) Therefore, Thompson fails to prove that Einstein treated any comparator outside of a protected class more favorably than he, and summary judgment is proper.

Furthermore, Thompson testified that he does not believe Einstein discriminated against him on account of his race. He merely maintains that his firing was unwarranted under the circumstances. The Court disagrees, noting again, that any one of the three instances of offending conduct leading to the termination of Thompson's employment reasonably did not meet the employer's legitimate employment expectations. The evidence of record would not permit a reasonable factfinder to conclude that race played into the adverse employment action in this case.

## IV. Conclusion

For any and all of the foregoing reasons, the Court GRANTS Einstein's Motion for Summary Judgment. ([ECF No. 30](#).) Final judgment will be issued under separate order.

SO ORDERED.

Date: 1/18/19

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES THOMPSON
2239 Harbor Drive Apt #C
Indianapolis, IN 46229

Jeffrey Scott Beck
FAEGRE BAKER DANIELS LLP (Indianapolis)
jeffrey.beck@FaegreBD.com

Jenie Van Hampton
FAEGRE BAKER DANIELS LLP (Indianapolis)
jenie.vanhampton@faegrebd.com